IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JONATHAN L. STEVENS,                          :
                                              :
                      Petitioner,             :
                                              :
        v.                                    :        Civil Action No. 18-1191-RGA
                                              :
TRUMAN MEARS, Warden,                         :
And ATTORNEY GENERAL OF THE                   :
STATE OF DELAWARE,                            :
                                              :
                      Respondents.[1]         :
_____

### <u>MEMORANDUM OPINION</u>

Jonathan L. Stevens.  *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

September __14__, 2021
Wilmington, Delaware

_____

[1]Warden Truman Mears has replaced former Warden Robert May, an original party to the case. *See* Fed. R. Civ. P. 25(d).

/s/ Richard G. Andrews

ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Jonathan Stevens filed the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition") pending before the Court.  (D.I. 1)  The State filed an Answer in opposition, to which Petitioner filed a Reply.  (D.I. 11; D.I. 15)  For the reasons discussed, the Court will deny the Petition.

## I.    BACKGROUND

On the evening of August 1, 2008, Tamara Stratton ("Stratton"), [Petitioner], and seventeen-year old [JB] left the residence of Stratton's aunt, and rode together to where Stratton lived. During this trip, [Petitioner] asked to borrow Stratton's pickup truck in order to go to a hotel to see someone. Stratton was dropped off at her home in Dover a little before 10 p.m. that evening. [Petitioner] and [JB] left in her truck.

Later that evening, Xiu Zhang ("Zhang") was working as a cook at the China King restaurant in Dover when two black men wearing disguises on their faces rushed in through the restaurant's back door. According to Zhang, the shorter of the two intruders was armed with a knife, while the other man appeared to have a gun. As Zhang attempted to flee out the front door, he was chased by the person with the knife. The pursuer hit Zhang with his fists and a chair. While Zhang was being assaulted, he saw the other intruder take the store's cash register drawer.

After attacking Zhang and seizing the register drawer with $700 in cash, the two robbers ran out the back door and fled southward. Chairs, a door, and the store computer for the China King were all damaged during the robbery. Zhang was treated for his injuries at Kent General Hospital. Photographs of the injuries were introduced as evidence at [Petitioner's] trial.

After Stratton read a newspaper article about the robbery at the China King restaurant, she telephoned the Dover Police Department on August 14, 2008. She told the police that on August 1, 2008, at around 10:00 p.m., she lent her pick-up truck to [Petitioner], a friend of hers. They were at her aunt's house when [Petitioner] told her that he needed to go to a hotel to see someone. [Petitioner] and his friend [JB] then drove Stratton home and departed in her truck.

Stratton also told police that later that same night she received a call from [Petitioner], who told her that her truck had ran out of gas and that he needed her to "come pick them up." She went to Governor's Avenue, where the truck was parked. When Stratton arrived at the Governor's Avenue location, she saw [Petitioner] and [JB] behind an apartment building.

At [Petitioner's] trial, Stratton testified that "They were setting fire to papers and what appeared to me to be a cash register." When asked at trial if [Petitioner] said anything to her, she replied: "At the time I really didn't get any response besides everything is okay, everything is okay, basically proceed; go get your truck; you don't know anything." On cross-examination at trial, Stratton clarified her testimony about what [Petitioner] and [JB] were burning, by explaining that the two men were not attempting to burn an entire cash register, but the "drawer to a cash register." Stratton testified that she called the police because she was afraid her truck would be linked to the robbery.

After speaking with Stratton, the police put together a line up which included [Petitioner's] photograph. The lineup was shown to Zhang, who was not able to identify the assailant. In separate photo lineups, however, Stratton identified [Petitioner] and [JB] as the persons who borrowed her truck and whom she saw burning a cash register.

Dover Police Detective Roswell obtained warrants for the arrest of [Petitioner] and [JB], and on August 22, 2008, he took the juvenile suspect, [JB], into custody. [JB] and his mother were transported to the Dover Police station where [JB] was interviewed by Detective Roswell in the presence of his mother. [JB] waived his *Miranda* rights and the interview was recorded on a DVD.

During his recorded police interview on August 22, 2008, [JB] told Detective Roswell where he and [Petitioner] had left the cash register drawer. Detective Roswell went to 34 South Governor's Avenue and located the black cash register drawer near the garage where [JB] said it was located. Although [JB] was arrested for the China King robbery on August 22, 2008, the Dover Police were not able to locate [Petitioner] until October 2, 2008.

[Petitioner] did not give a statement to police. Nor did he testify at trial. The record reflects that the defense rested at [Petitioner's] trial without presenting any evidence.

2

*Stevens v. State*, 3 A.3d 1070, 1071–72 (Del. 2010)

In May 2009, a Delaware Superior Court jury found Petitioner guilty of first degree robbery, second degree conspiracy, possession of a firearm during the commission of a felony, possession of a firearm by a person prohibited, wearing a disguise during the commission of a felony, and misdemeanor criminal mischief.  *See id.* at 1071.  On July 14, 2009, the Superior Court sentenced Petitioner as a habitual offender to an aggregate fifty-eight years at Level V incarceration, thirty-five of which are mandatory, followed by descending levels of supervision. (D.I. 12-2 at 24-31); *see also Stevens*, 3 A.3d at 1071.   Petitioner appealed, and  the Delaware Supreme Court affirmed Petitioner's convictions and sentence on July 22, 2010.  *See Stevens*,  3 A.3d at 1077.

In September 2010, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61.  (D.I. 12-1 at 4, Entry No. 34)  The Superior Court denied the Rule 61 motion on January 30, 2013.  *See State v. Stevens*, 2013 WL 3867184, at *2 (Del. Super. Ct. Jan. 30, 2013).  Petitioner appealed, and the Delaware Supreme Court remanded Petitioner's case and ordered the Superior Court to appoint counsel to represent Petitioner in his Rule 61 proceeding.  *See Stevens v. State*, 2013 WL 4858987, at *1 (Del. Sept. 10, 2013).  On May 18, 2015, appointed post-conviction counsel filed an amended Rule 61 motion.  (D.I. 12-12 at 186-223)  In June 2017, a Superior Court Commissioner issued a report recommending the denial of Petitioner's amended Rule 61 motion.  *See State v. Stevens*, 2017 WL 4466682, at *9-17 (Del. Super. Ct. Oct. 6, 2017).  Petitioner "appealed" that decision to the Superior Court by filing objections.  (D.I. 12-12 at 256-276)  The Superior Court rejected the objections, adopted the Commissioner's Report and Recommendation, and denied the amended Rule 61 motion on

3

October 6, 2017. *See Stevens*, 2017 WL 4466682, at *1-17. The Delaware Supreme Court affirmed that decision on June 7, 2018. *See Stevens v. State*, 188 A.3d 810 (Table), 2018 WL 2754056, at *1 (Del. June 7, 2018).

## II.   STANDARD OF REVIEW

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only

rebutted by clear and convincing evidence to the contrary.  *See* 28 U.S.C. § 2254(e)(1);

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues,"

whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III.    DISCUSSION

Petitioner asserts the following five claims for relief:  (1) trial counsel provided

ineffective assistance by failing to object to JB's recorded statement being admitted into

evidence pursuant to 11 Del. Code § 3507; (2) the State engaged in prosecutorial misconduct by

failing to redact certain portions of JB's recorded statement; (3) the State violated *Brady v.*

*Maryland*, 373 U.S. 83 (1963) by failing to disclose a witness' prior shoplifting conviction; (4)

the cumulative effect of the preceding constitutional errors violated Petitioner's due process

rights; and (5) the Superior Court violated Petitioner's due process rights during his Rule 61

proceeding by failing to conduct an evidentiary hearing and denying Petitioner an opportunity to

present witnesses and to compel testimony.  (D.I. 1)

The record reveals that Petitioner presented all five claims to the Superior Court in his

amended Rule 61 motion, in his objections to the Superior Court Commissioner's Report and

Recommendation, and to the Delaware Supreme Court on post-conviction appeal.  (D.I. 12-12 at

186-223, 256-276; D.I. 12-11)  The Superior Court noted that the Claims were procedurally

barred, but proceeded to deny all of them as meritless.  *See Stevens*, 2017 WL 4466682, at *12-

*13.  The Delaware Supreme Court affirmed the Superior Court's denial of Petitioner's amended

Rule 61 motion "on the basis of and for the reasons assigned by the Superior Court in its order of

October 6, 2017."  *Stevens*, 2018 WL 2754056, at *1.  In this proceeding, the State implicitly

5

waives any procedural bar by asserting that the Court must review the Claims under § 2254(d).
(D.I. 11 at 7)  Given these circumstances, the instant five Claims will only warrant  habeas relief
if the Superior Court's decision[2] was either contrary to, or an unreasonable application of, clearly
established Supreme Court precedent.

### A.  Claim One: Ineffective Assistance of Trial Counsel

In Claim One, Petitioner contends that trial counsel provided ineffective assistance by
"failing to object, review or request [a] curative instruction" when JB's prior recorded statement
was admitted into evidence.  (D.I. 1 at 16-17)  Petitioner asserts that trial counsel's actions
permitted the jury to "hear highly prejudicial and ultimately irrelevant comments concerning
possible prior crimes committed by Petitioner.  Additionally, [since] trial counsel declined the
trial court's curative instruction for the jury to disregard the improper statements, jurors were
permitted to consider Detective Roswell's belief that Petitioner allegedly committed other
uncharged robberies when determining Petitioner's guilt in this case."  (D.I. 1 at 18)

The clearly established Supreme Court precedent governing ineffective assistance of
counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S.
668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first
*Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an
objective standard of reasonableness," with reasonableness being judged under professional

---

[2]*See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court
affirms a lower court's judgment without an opinion or other explanation, federal habeas law
employs a "look through" presumption and assumes that the later unexplained order upholding a
lower court's reasoned judgment rests upon the same grounds as the lower court judgment*); Ylst
v. Nunnemaker*, 501 U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has
been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding
that judgment or rejecting the same claim rest upon the same ground.").

norms prevailing at the time counsel rendered assistance.  *See Strickland*, 466 U.S. at 688.

Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different."  *Id.* at 694.  A reasonable probability is a "probability sufficient to undermine

confidence in the outcome."  *Id.*

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must

make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.

*See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885,

891-92 (3d Cir. 1987).  Although not insurmountable, the *Strickland* standard is highly

demanding and leads to a strong presumption that the representation was professionally

reasonable.  *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior

Court correctly identified the *Strickland* standard applicable to Petitioner's ineffective assistance

of counsel allegations.  Consequently, the Superior Court's decision was not contrary to clearly

established federal law.  *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision

applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does]

not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Superior

Court reasonably applied the *Strickland* standard to the facts of Petitioner's case.  *See*

*Harrington*, 562 U.S. at 105-06.  When performing this inquiry, the Court must review the

Delaware state courts' denial of Petitioner's ineffective assistance of counsel allegations through

a "doubly deferential" lens.[3]  *Id.*  "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable."  *Id.*  And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id.* at 101.

The following facts provide important background information relevant to the Court's analysis of Claim One.  After receiving information on August 14, 2008 from Stratton about the August 1, 2008 robbery, the Dover Police obtained arrest warrants for Petitioner and JB, the suspected robbers.  *See Stevens*, 3 A.3d at 1071-72.  JB, a juvenile, was taken into custody on August 22, 2008, and participated in a recorded police interview.  *See id.* at 1072; (D.I. 12-12 at 14-53).  On January 21, 2009, JB pled guilty to three charges related to the robbery – first degree robbery, possession of a firearm during the commission of a felony, and second degree conspiracy – and was sentenced to six years of incarceration.  *See id.* at 1074; (D.I. 12-12 at 119-120, 134)

---

[3]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

JB appeared as a prosecution witness on the second day of Petitioner's trial. (D.I. 12-12 at 117-141)  During JB's direct examination, the State introduced a copy of JB's redacted August 22, 2008 police interview and played it for the jury.  (*Id*. at 128-131)  In the recorded interview that was played for the jury, Detective Roswell asked JB, "I think you guys have done some other ones. I think he's brought you along for some other ones." *Stevens*, 3 A.3d at 1074-75.  JB denied committing any other crimes with Petitioner.  *Id*. at 1075.  Detective Roswell then asked JB, "What else has he done[?]" to which JB responded, "Only thing I know about is when he had the truck."  *Id.*  At that point in the playing of the recorded interview, trial counsel objected, stating, "I don't think there is anything else germane to the case today. Under the circumstances, I object to any further playing of the tape." (D.I. 12-12 at 129)  When trial counsel decided not to accept the court's offer of a curative instruction, the playing of JB's recorded statement resumed.  (*Id*. at 130)

On direct appeal in 2010, Petitioner raised concerns about the propriety of playing portions of co-defendant JB's prior recorded interview at trial.  Specifically, Petitioner argued, the "State was erroneously permitted, under 11 Del. C. § 3507, to present to the jury Detective Roswell's irrelevant and unduly prejudicial: opinion that [Petitioner] was involved in other robberies; opinion as to the credibility of the State's key witnesses; characterization of the evidence; and misstatement of the evidence.  The detective's statements were contained within the DVD of his interrogation of [JB]."  (D.I. 12-2 at 10-11)  After a detailed factual review of the circumstances of the playing of the tape and its contents, the Delaware Supreme Court affirmed Petitioner's convictions, holding that:

> [Petitioner's] trial attorney's initial decision not to move for a
> mistrial or to accept the trial judge's offer of a curative instruction,

> and counsel's failure to object to Detective Roswell's subsequent statements, all preclude any review for plain error in this direct appeal.

*Stevens*, 3 A.3d at 1077.

In this proceeding, Petitioner presents two arguments concerning trial counsel's performance with respect to the admission of JB's recorded statement: (1) trial counsel provided ineffective assistance by failing to review JB's redacted recorded statement prior to its admission at his trial; and (2) trial counsel provided ineffective assistance by failing to request a curative instruction with regard to the inadmissible portion of JB's recorded statement.

### 1.   Failure to review JB's recorded statement before it was admitted at trial

When presented with Petitioner's 2017 Rule 61 argument regarding trial counsel's failure to review JB's statement to the police, the Superior Court determined:

> (1) the State should have redacted [the aforementioned] portion of the interrogation [containing Detective Roswell's irrelevant statements] and that (2) [Petitioner's] trial counsel should have ensured that such redactions were done prior to trial to avoid the jury hearing inadmissible portions of the statement.  [Petitioner's] trial counsel admitted that he did not review the 3507 Statement prior to the State playing it at trial.  Given the Delaware Supreme Court's clear guidance on this issue prior to [Petitioner's] initial trial, his counsel's failure to review the statement prior to its admission was deficient. However, this deficient performance did not prejudice [Petitioner] sufficiently to warrant a new trial.

*Stevens*, 2017 WL 4466682, at *4.

After reviewing the record, the Court concludes that the Superior Court reasonably applied *Strickland* in holding that trial counsel's failure to review JB's recorded statement prior to its admission at trial did not prejudice Petitioner. Petitioner has not shown it is reasonably

likely that this error would have caused the jury to have had a reasonable doubt about guilt,[4] nor has he shown that a "fairminded" jurist could not conclude that the Superior Court's decision was sound.  Even without the inadmissible portion of the JB's recorded interview, there was more than sufficient other evidence to convict Petitioner.  To begin, the determination that the portion of JB's recorded statement containing Detective Roswell's improper questions was inadmissible does not change the fact that the remainder of  JB's recorded statement was still admissible and contained relevant information implicating Petitioner in the robbery.  In addition, Stratton testified that, on the same night of the robbery, she saw Petitioner burning the cash register drawer taken from the victims, and the police retrieved the burned cash drawer from the area Stratton had indicated.  Finally, Zhang (the victim) testified at trial and identified Petitioner as the perpetrator of the robbery and the assault.[5]  Given this record, Petitioner cannot demonstrate a reasonable probability that the result of his trial would have been different but for trial counsel's failure to review JB's recorded statement prior to its admission.

### 2.  Failure to request curative instruction

Petitioner also argues that trial counsel provided ineffective assistance by failing to request a curative instruction for the inadmissible portion of JB's recorded statement.  The Superior Court rejected this argument after referring to trial counsel's Rule 61 affidavit, holding:

> [A]s soon as the State played the inadmissible section of [JB's] 3507 Statement, [Petitioner's] trial counsel objected. In his affidavit, trial counsel stated that he objected to "stop the playing of the tape." He further noted that at first he agreed with the trial judge's offer of an

---

[4] "[T]he Court does not think that this was a close case."  *Stevens*, 2017 WL 4466682, at *6.

[5] Although trial counsel established on cross-examination that Zhang "was unable to identify [Petitioner] in a photo array two weeks after the robbery occurred, the jury was still able to consider [Zhang's] testimony that [Petitioner] was the person who robbed and assaulted him." *Stevens*, 2017 WL 4466682, at *4.

instruction.  However, "upon further reflection, [he] concluded that [he] would rather not have an instruction given because [he] did not want to call any more attention to the comment than had already been made, and especially in light of Co–Defendant [JB's] response."

Given the strong presumption that a lawyer's conduct falls within sound trial strategy, the Court finds that his decision to decline a curative instruction was not unreasonable. The record reflects that trial counsel considered the jury instruction and the circumstances of the statement in the context of the overall case. Not wanting to draw attention to the statement of a police officer implying that [Petitioner] had committed other robberies was a judgment call by an experienced attorney. The record reflects that this was part of a sound trial strategy and therefore was not unreasonable performance. Accordingly, [Petitioner's] ineffective assistance of counsel claim on that basis is also without merit.

Even if the failure to accept a curative instruction amounted to deficient performance, [Petitioner's] claim would still fail because of insufficient prejudice in the context of the overall evidence. As discussed above, the absence of this statement would not have created reasonable doubt with the jury regarding [Petitioner's] guilt. Accordingly, he would not be able to meet the second prong of *Strickland*, and his claim would still fail.

*Stevens*, 2017 WL 4466682, at \*5.

The Superior Court reasonably applied *Strickland* in holding that trial counsel's failure to request curative instruction did not satisfy either prong of *Strickland*.  The record demonstrates that trial counsel seriously considered the Superior Court's offer of a curative instruction, but ultimately declined the instruction because he thought it would draw attention to otherwise inadmissible and irrelevant evidence.  This tactical decision falls within the wide range of professionally reasonable conduct under *Strickland*.

Counsel's failure to request a curative instruction also did not prejudice Petitioner.  By declining the instruction, trial counsel avoided drawing extra attention to the inadmissible

portion of the statement.  Given the other evidence that was presented at trial, Petitioner cannot

establish a reasonable probability that the omission of a curative instruction affected the outcome

of his trial.

Accordingly, the Court will deny Claim One.

### B.  Claim Two: Prosecutorial Misconduct

In Claim Two, Petitioner asserts that the State engaged in prosecutorial misconduct by

failing to redact from JB's recorded statement Detective Roswell's improper questions (*i.e.*, the

questions that suggested Petitioner had participated in other crimes).  In order for a prosecutorial

misconduct claim to warrant federal habeas relief, the prosecutor's actions must have "so infected

the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974); *Darden v. Wainwright*, 477 U.S. 168, 180 (1986).  A

prosecutorial misconduct claim must be examined in "light of the record as a whole" in order to

determine whether the conduct "had a substantial and injurious effect or influence" on the jury's

verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  In the Third Circuit, this inquiry

involves examining "the prosecutor's offensive actions in context and in light of the entire trial,

assessing the severity of the conduct, the effect of the curative instructions, and the quantum of

evidence against the defendant."  *Moore v. Morton*, 255 F.3d 95 (3d Cir. 2001).

Petitioner presented the argument in Claim Two to the Superior Court in his Rule 61

proceeding.  The Superior Court concluded that, while the State erred by failing to redact

Detective Roswell's improper questions, that failure did not warrant a new trial:

> [T]he State clearly should have redacted this portion of the 3507
> Statement. Mandatory case authority required this, and that
> authority predated [Petitioner's] trial.  Accordingly, it was
> misconduct for the State to not have redacted this section of the

13

statement.  However, under the circumstances of this case, the Court
declines to overturn [Petitioner's] conviction.

*Stevens*, 2017 WL 4466682, at *6.


Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior

Court did not specifically apply the *Donnelly/Darden* standard when holding that the State's

redaction failure did not amount to prosecutorial misconduct warranting relief.  Nevertheless, the

Court concludes that the Superior Court's decision was not contrary to Supreme Court precedent,

because the state case cited therein[6] refers to *Donnelly* and articulates a standard consistent with

the federal standard applicable to prosecutorial misconduct claims.  *See Fahy v. Horn*, 516 F.3d

169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's decision was not "contrary to" clearly

established Federal law because it appropriately relied on its own state court cases, which

articulated the proper standard derived from Supreme Court precedent); *Williams*, 529 U.S. at

406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme

Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s

'contrary to' clause.").

The Court also concludes that the Superior Court's decision did not involve an

unreasonable application of the *Donnelly/Darden* standard.  To begin, the Superior Court

reasonably determined the facts by concluding that, while "it was misconduct for the State to not

have redacted this section of [JB's] statement," the "four unredacted lines of the lengthy [JB]

---

[6]The Superior Court cited to *Hughes v. State*, 437 A.2d 559 (Del. 1981).  In *Hughes*, the Delaware
Supreme Court held that a court must consider the following factors when determining whether
prosecutorial misconduct "prejudicially affected the substantial rights of the accused": (1) the
closeness of the case; (2) the centrality of the issue affected by the alleged error; and (3) the steps
taken to mitigate the effects of the error.  *Hughes*, 437 A.2d at 571.

14

record interview upon which [Petitioner] focuses appear to be nothing more nefarious than the prosecutor neglecting to remove some vague and extraneous matter." *Stevens*, 2017 WL 4466682, at *6, *16.  Using this factual determination as its premise, the Superior Court addressed Petitioner's argument under Delaware's standard for prosecutorial misconduct, concluding:

> Not every prosecutorial oversight in the redaction of a lengthy recorded interview requires reversal. Only omissions that are so unduly prejudicial that the reliability of the verdict is diminished require a new trial.  Not every omission or oversight that occurs at trial amounts to prosecutorial misconduct. As the Delaware Supreme Court has observed in connection with such minor matters, [t]he phrase 'prosecutorial misconduct' is not a talismanic incantation, the mere invocation of which will automatically lead to a reversal… [W]e do not condone the magic bullet approach . . . loosely based on 'prosecutorial misconduct.'

*Stevens*, 2017 WL 4466682, at *15.

The Superior Court's application of Delaware law regarding prosecutorial misconduct – with its focus on the entire record, quantum of evidence presented, and the misconduct's effect on the reliability of the verdict – was consistent with, and a reasonable application of, the *Donnelly/Darden* standard.  As discussed at length above, the jury was exposed to Detective Roswell's suggestive questions only once, and there was substantial other evidence of Petitioner's guilt.  Given this record, the admission of Detective Roswell's questions that should have been redacted cannot be said to have infected the trial with such unfairness as to make Petitioner's conviction a denial of due process.  Accordingly, the Court will deny Claim Two.

### C.  Claim Three: *Brady* Violation

Next, Petitioner contends that the State violated *Brady v. Maryland* by failing to disclose that Stratton was convicted of shoplifting in 2000, because he would have been able to use that

information to impeach Stratton's credibility.  The Superior Court denied the argument as meritless.  Therefore, Petitioner will only be entitled to habeas relief if the Superior Court's decision was either contrary to, or an unreasonable application of, *Brady v. Maryland*.

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87.  This "duty to disclose such evidence is applicable even though there has been no request by the accused," and includes "impeachment evidence as well as exculpatory evidence."  *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  "Such evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Id*.  "In order to comply with *Brady*, therefore, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."  *Id*. at 281 (cleaned up). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Id*. at 281-82.

In Petitioner's case, the Superior Court determined that the State did not disclose Stratton's prior conviction and, therefore, assumed that there was a *Brady v. Maryland* violation. *See Stevens*, 2017 WL 4466682, at *7.  Nevertheless, the Superior Court concluded:

> [T]he failure to disclose Ms. Stratton's prior shoplifting conviction does not undermine the Court's confidence in the verdict.  As already discussed, this was not a close case.  Accordingly, impeaching Ms.

> Stratton with a prior shoplifting conviction from nine years earlier
> would not have impacted this verdict.

*Stevens*, 2017 WL 4466682, at *7.

Since the Superior Court correctly identified the *Brady v. Maryland* standard, the Superior Court's decision is not contrary to clearly established federal law. The Court also concludes that the Superior Court did not unreasonably apply *Brady v. Maryland* when denying Claim Three. The failure to disclose *Brady* evidence only mandates a new trial if such evidence is "material," that is, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). In turn, "[t]he materiality of *Brady* material depends almost entirely on the value of the evidence relative to the other evidence mustered by the state." *Johnson v. Folino*, 705 F.3d 117, 129 (3d Cir. 2013). "[U]ndisclosed evidence that would seriously undermine the testimony of a key witness may be considered material when it relates to an essential issue or the testimony lacks strong corroboration." *Id*. Conversely, "evidence impeaching an eyewitness may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 565 U.S. 73, 76 (2012).

Here, during Petitioner's trial, Stratton testified that she saw the two defendants "setting fire to papers and what appeared to me to be a cash register." (D.I. 12-12 at 61) However, significantly greater incriminating evidence of Petitioner's guilt was introduced at trial via JB's taped statement[7] (D.I. 12-12 at 47-52) and Zhang's testimony describing the details of the

---

[7]In the taped statement, JB explained that, while Petitioner did not tell him the plan, he did tell JB, "it's on tonight." (D.I. 12-12 at 47) JB also stated that Petitioner drove the car, obtained the masks, and described what Petitioner was wearing on the night of the crime. (*Id*. at 48) JB described how he – JB – grabbed the register and threw it in the truck; that Petitioner "said his wrist was messed up" from the altercation with Zhang; how and where they sped off to in the

robbery and assault.   (D.I. 12-12 at 78-101)  Consequently, even if the nondisclosed impeachment evidence of Stratton's nine year old shoplifting conviction had been provided to Petitioner, and noting that an old shoplifting conviction is not very weighty impeachment evidence, the other evidence implicating Petitioner in the robbery was strong enough to sustain confidence in the verdict.  Accordingly, since there is not a reasonable probability of a different outcome so as to undermine confidence in the verdict, the Court will deny Claim Three for failing to satisfy § 2254(d).

### D.   Claim Four: Cumulative Error of Claims One, Two, and Three

In Claim Four, Petitioner contends that the cumulative effect of the errors alleged in Claims One through Three deprived him of his due process right to a fair trial.  (D.I. 1 at 24-25) Petitioner presented this argument to the Delaware state courts in his Rule 61 proceeding, and the Superior Court denied the argument as meritless.  Specifically, the Superior Court held that the outcome of Petitioner's trial "would not change in light of the cumulative impact of these errors," and found "the verdict is worthy of confidence despite the cumulative impact of the[] errors."  *Stevens*, 2017 WL 4466682, at *8.

The Third Circuit has recognized the cumulative error doctrine on habeas review, holding that "a cumulative error argument constitutes a stand-alone constitutional claim subject to exhaustion and procedural default."  *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014).  Pursuant to the cumulative error doctrine,

> Individual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermined the fundamental fairness of his trial and denied him his constitutional right to due process.  Cumulative errors are not harmless

---

truck; that Petitioner had a knife in the truck; and how they burned the cash register.  (*Id*. at 48-52)

> if they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief based on cumulative errors unless he can establish actual prejudice.

*Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008) (cleaned up).

Here, the Superior Court reviewed and rejected each of the three underlying errors on their merits, and also rejected Petitioner's cumulative error argument because he failed to establish any reasonable likelihood of a changed trial outcome if the cumulative impact of the errors was considered.  Since Petitioner has not provided anything to demonstrate "actual prejudice" even when Claims One through Three are considered together, the Court will deny Claim Four as meritless.

### E.  Claim Five: Due Process Violation Due to Superior Court's Refusal to Conduct Evidentiary Hearing

In his final Claim, Petitioner contends that the Superior Court violated his right to due process by failing to conduct an evidentiary hearing in his Rule 61 proceeding.  He asserts that the Superior Court denied him "the opportunity to present witnesses" and also denied him the opportunity to "present witnesses and [] compel testimony and production of evidence concerning multiple constitutional claims."  (DI. 1 at 26)

It is not the province of a federal habeas court to determine whether state courts have properly applied their own evidentiary rules.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, the only question for a habeas court is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates Due Process." *Id.* at 72.

Here, Petitioner has not shown that the absence of an evidentiary hearing for Claims One through Four denied him rights guaranteed by the due process clause. Delaware Superior Court Criminal Rule 61(h) grants the Superior Court discretion in deciding whether to conduct an evidentiary hearing in connection with a Rule 61 post-conviction relief motion. *See* Del. Super. Ct. R. 61(h)(1),(3). The Superior Court does not abuse its discretion in denying an evidentiary hearing request if the record is sufficient to establish that the petitioner's claims lack merit. *See Johnson v. State*, 129 A.3d 882 (Table), 2015 WL 8528889, at *4 (Del. Dec. 10, 2015).

When denying Petitioner's request for an evidentiary hearing, the Superior Court explained that Petitioner's "several arguments for postconviction relief are all either procedurally barred or without merit," and that it was "comfortable making this decision in the absence of a further evidentiary hearing." *Stevens*, 2017 WL 4466682, at *8. In this proceeding, Petitioner does not identify any witnesses he would have had testify at an evidentiary hearing, nor does he identify evidence he believes would have been presented at an evidentiary hearing. Petitioner has not alleged any facts that, if proven, would entitle him to relief in his Rule 61 proceeding or in the instant proceeding. Therefore, the Court concludes that the Superior Court did not violate Petitioner's due process rights by denying his request for an evidentiary hearing.

To the extent Petitioner requests an evidentiary hearing in this proceeding, the request is denied. A habeas petitioner is not entitled to an evidentiary hearing in most cases. The Supreme Court has explained, "Although state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster*, 563 U.S. 170, 186 (2011). Typically, requests for an evidentiary hearing in a federal habeas proceeding are evaluated under 28 U.S.C. § 2254(e)(2), which provides:

20

       (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that

          (A)   the claim relies on –

               (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

               (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

          (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  "In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2), the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007); *see also* Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254.  When deciding whether to grant an evidentiary hearing in a federal habeas proceeding, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations," taking into consideration the "deferential standards prescribed by 28 U.S.C. § 2254." *Schriro*, 550 U.S. at 474.  An evidentiary hearing is not necessary if the issues can be resolved by reference to the record developed in the state courts.  *Schriro*, 550 U.S. at 474.

      Given the record of this case, Petitioner is not entitled to an evidentiary under the standard articulated in 28 U.S.C. § 2254(e)(2).  Even if an evidentiary hearing was not barred

under § 2254(e)(2), the Court would not exercise its discretion to conduct one. The Court has determined that all five Claims lack merit under § 2254(d), and Petitioner's assertions do not demonstrate how a hearing would advance his arguments. Therefore, an evidentiary hearing is unnecessary.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing. An appropriate Order will be entered.